## AFFIDAVIT OF LOST NOTE

I, Keith Clary, being over the age of eighteen, having been duly sworn say:

1. I am the Assistant Secretary of Fay Servicing, LLC ("Fay") as attorney-in-fact for Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Owner Trustee of CIM 2019-R5, and this affidavit is made based upon the business records of Fay which are kept in the ordinary course of business, made at or near the time of their occurrence by—or from information transmitted by—someone with knowledge; it is the regular practice of Fay to make and keep such records; Fay relies on those records in its day to day operations and I have reviewed those records.

2. Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Owner Trustee of CIM 2019-R5 is the current holder of a Disclosure Statement, Note and Security Agreement ("Note") dated November 25, 2006, in the original principal amount of Two Hundred and Six Thousand Four Hundred Forty-Seven and 40/100 & 00/100 Dollars ($206,447.40), by and between John M. McDonough and Nancy McDonough hereinafter referred to as "Borrowers"), and CitiFinancial, Inc..

3. The original Note is customarily kept in our files, as custodian of said documents on behalf of Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Owner Trustee of CIM 2019-R5 for the Borrowers at our offices at  1601 LBJ Freeway, Ste.150, Farmers Branch, TX 75234   .

4. Fay Servicing, LLC has examined the Borrowers' origination loan file for the original Note but has been unable to locate same.

5. Fay Servicing, LLC has diligently reviewed and searched all of the files in their possession to discover the lost original Note.

6. Fay Servicing, LLC has been unable to discover the location of the original Note after diligent efforts.

7. Fay Servicing, LLC has reviewed the collateral file where original documents including the Note, Original Mortgage, Original Assignments and title policy are kept to discover the location of the original Note and after such review states the Note is not in the file and all of the documents in the collateral file as previously listed have been transferred to the main offices of Doonan, Graves and Longoria LLC, 100 Cummings Center, Suite 303C, as agent for the Plaintiff where they will remain throughout the foreclosure process.

*P:\Scans\bs\Lost Note Affidavit Mcdonough 0000216687.doc*



EXHIBIT B

8. CitiFinancial, Inc. has assigned, pledged and hypothecated the Note to Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Owner Trustee of CIM 2019-R5.

9. Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Owner Trustee of CIM 2019-R5 has not further assigned, pledged or hypothecated the Note.

10. A copy of the aforesaid Promissory Note is attached hereto as Exhibit "A.

11. I am making this affidavit for the purpose of foreclosing the mortgage that secures the hereto described Note.

By Fay Servicing, LLC as attorney-in-fact for Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Owner Trustee of CIM 2019-R5

By: Keith Clary
Its: Assistant Secretary

Corporate Acknowledgment

State of __TEXAS__
County of __DALLAS__

On the 13th day of November in the year 2023, before me, the undersigned, personally appeared Keith Clary, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the City of Farmers Branch, County of Dallas, in the State of Texas.

DEKENDRICK GANISON
Notary Public, State of Texas
Comm. Expires 05-27-2025
Notary ID 128287218

Notary Public
My commission expires: MAY 2 7 2025

RE: 205 Webster Road, Buxton, ME 04093

P:\Scans\bs\Lost Note Affidavit Mcdonough 0000216687.doc

# Disclosure Statement, Note and Security Agreement

| Borrower(s) (Name and Mailing address) | Lender (Name, address, city and state) | Account No. |
|---|---|---|
| NANCY MCDONOUGH<br>JOHN M MCDONOUGH<br>205 WEBSTER RD<br>BUXTON ME 04093 | CITIFINANCIAL, INC.<br><br>39 MECHANIC STREET SUITE 200<br>WESTBROOK ME 04092 | Date of Loan<br>11/25/2006 |

| ANNUAL PERCENTAGE RATE<br>The cost of Borrower's credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost Borrower. | Amount Financed<br>The amount of credit provided to Borrower or on Borrower's behalf. | Total of Payments<br>The amount Borrower will have paid after Borrower has made all payments as scheduled. |
|---|---|---|---|
| 9.27 % | $ 395,432.88 | $ 200,954.95 | $ 596,387.83 |

### Payment Schedule:

| Number of Payments | Amount of Payments * | When Payments Are Due |
|---|---|---|
| 1 | $ 1,707.92 | 01/01/2007 |
| 359 | $ 1,656.49 | MONTHLY BEGINNING 02/01/2007 |
| | $ | |
| | $ | |

**Security:** If checked, Borrower is giving a security interest in:
- [ ] Motor Vehicle
- [ ] Mobile Home
- [X] Real Property
- [ ] Other:

**Late Charge:** None.

**Prepayment:** If Borrower pays off early, Borrower will not have to pay a penalty, and will not be entitled to a refund of part of the finance charge.

See the contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

* Does not include any insurance premium.

Additional Information:

| Total amount of first month's payment including insurance premiums, if any. | PRINCIPAL | POINTS | DATE CHARGES BEGIN |
|---|---|---|---|
| $ 1,707.92 | $ 206,447.40 | $ 5,442.45 | 11/30/2006 |

### Required Insurance Disclosure:

If Borrower grants Lender a security interest as indicated in this document, insurance to protect the Lender's interest in the collateral may be required. If this loan is secured by real property, or mobile/manufactured home, then fire, extended coverage, collision and/or comprehensive casualty insurance is required naming Lender as loss payee, until the loan is fully paid. The amount of such insurance must be sufficient to satisfy the unpaid balance of the loan, or be equal to the value of the collateral, whichever is less. Any such insurance may be provided through an existing policy or a policy obtained independently and purchased by Borrower. Borrower may obtain such insurance from any insurer that is reasonably acceptable to Lender.

If the collateral securing the credit is a motor vehicle (including a recreational vehicle, boat, or movable mobile home), Borrower must provide collision and comprehensive casualty insurance in an amount sufficient to satisfy the unpaid balance of the loan or equal to the value of the collateral, whichever is less. All such policies and renewals thereof must name Lender as loss payee and must be maintained by Borrower, until the credit is repaid in full. Borrower may obtain a new insurance policy or provide an existing policy from any insurer that is acceptable to Lender. If Borrower obtains the Automobile Physical Damage Insurance at Lender's office, Borrower acknowledges that such insurance (1) may cost more than insurance that is available from another insurer, (2) will only protect Lender's interest in the collateral and does not protect Borrower's interest, and (3) does not protect Borrower from claims by other persons.

I/We request the following insurance:

| Cost/Premium: | Insurance Type: | Insurance Term (in mos.): |
|---|---|---|
| $ NONE | Modified Automobile Single Interest | |

First Borrower's Signature: Nancy McDonough  Date: 11/25/06
Second Borrower's Signature: John M McDonough  Date: 11/25/06

### Optional Insurance Disclosure:

Borrower is not required to purchase optional insurance products, such as: Credit Life, Credit Disability, Involuntary Unemployment Insurance or any other optional insurance products. Lender's decision to grant credit will not be affected by Borrower's decision to purchase or decline to purchase optional insurance.

Coverage will not be provided unless Borrower signs and agrees to pay the applicable monthly premium in addition to the monthly loan payment disclosed above.

Borrower should refer to the terms contained in the applicable certificate or policy of insurance issued for the exact description of benefits, exclusions and premium rates.

If Borrower purchases insurance, Borrower's monthly payment will include both the monthly loan payment disclosed above and the applicable monthly premiums.

I/We request the following insurance:

| Premium Due with the First Month's Loan Payment | First Year's Premium * | Insurance Type: |
|---|---|---|
| $ NONE | $ | |
| $ NONE | $ | |
| $ NONE | $ | |

First Borrower's Signature: Nancy McDonough  Date: 11/25/06
Second Borrower's Signature: John M McDonough  Date: 11/25/06

(* First year's premiums are calculated on the assumption that monthly loan payments are timely made). Accrued but unpaid premium, if not paid earlier, will be due and payable at the time of the final payment on the loan. However, failure to pay premiums may result in termination of insurance as described below.

### Termination of Insurance:

Borrower may cancel any of the optional insurance products offered at any time. The optional insurance will terminate upon the earliest of the following occurrences:

(1) the Lender's receipt of Borrower's written request for termination;
(2) on the date when the sum of past due premiums equal or exceed four times the first month premium;
(3) termination pursuant to the provisions of the insurance certificate;
(4) payment in full of Borrower's Loan;
(5) death of Borrower.

**TERMS:** In this Disclosure Statement, Note and Security Agreement, the word "Borrower" refers to the persons signing below as Borrower, whether one or more. If more than one Borrower signs, each will be responsible, individually and together, for all promises made and for repaying the loan in full. The word "Lender" refers to the lender whose name and address are shown above.

Borrower's Initials: NM  JMM

ME 21173-4 8/2005   Original (Branch)   Copy (Customer)   Page 1 of 4

PROMISE TO PAY: In return for a loan that Borrower has received, Borrower promises to pay to the order of Lender the Principal amount shown above, which includes any Points shown above, plus interest on the unpaid Principal balance from the Date Charges Begin shown above at the rate of interest of:

(Applicable Box Must be Checked)

[X]  08.9688 % per annum. On the  N/A  month anniversary of the Date of Loan shown above, the rate of interest applicable to the remaining unpaid Principal balance shall decrease to N/A  % per annum.

[ ]  ___% per annum on the first $ _____ of the unpaid Principal balance; and  ___% per annum on the remaining unpaid Principal balance.  of the unpaid Principal balance;  ___% per annum on the next $

Lender will compute interest on the unpaid Principal balance on a daily basis from the date charges begin until Borrower repays the loan. If Borrower does not make sufficient or timely payments according to the payment schedule above, Borrower will incur greater interest charges on the loan.

Principal and interest shall be payable in the monthly installments shown above, except that any appropriate adjustments will be made to the first and final payments, beginning on the first payment date shown above and continuing on the same day in each following month until paid in full. Upon the final payment date, the entire outstanding balance of Principal and interest evidenced by this Disclosure Statement, Note and Security Agreement shall be due and payable. Any payment(s) which Lender accepts after the final payment date or the acceleration thereof do not constitute a renewal or extension of this loan unless Lender so determines.

Each payment shall be applied as follows: (1) monthly loan payments due (first to interest, then principal), (2) insurance premiums due, (3) unpaid interest to the date of payment, if any, then (4) principal. Lender may collect interest from and after maturity upon the unpaid Principal balance at the maximum rate permitted under the then applicable law or the rate of interest prevailing at the time of maturity under this Disclosure Statement, Note and Security Agreement. If the Annual Percentage Rate shown above exceeds 18%, Lender may collect interest from and after maturity upon the unpaid Principal balance at the rate of 8% per annum.

Any amount shown above as Points has been paid by Borrower as Points. This amount is considered a prepaid charge and are earned prior to any other interest on the loan balance. In the event of prepayment of the loan, Partial prepayment and the application of a Refund to the unpaid balance of the loan will not affect the amount or due date of subsequent scheduled payments on the loan, but may reduce the number of such payments.

PREPAYMENT: Borrower may prepay this loan in whole or in part at any time without penalty. However, upon partial prepayment, interest will continue to accrue on any remaining Principal balance. Partial prepayment will not affect the amount or due date of subsequent scheduled payments on the loan, but may reduce the number of such payments.

SECURITY AGREEMENT:

[ ]  A. If this box is checked, this loan is unsecured.

[ ]  B. If this box is checked, to secure the payment and performance hereof, Borrower gives to Lender a security interest under the Uniform Commercial Code in any property for which a description is completed below and all parts and equipment now or later added to the property and any proceeds of the property, all of which will be called "Property". See below for additional terms applicable to this security interest.

1. Motor vehicle/mobile home:

| Make, No. Cylinders | Year/Model | Model No. Or Name | Body Type | Identification Number |
|---|---|---|---|---|
|  |  |  |  |  |

2. Other Property:

[X] C. If this box is checked, Borrower's loan is secured by a Deed of Trust or Mortgage of even date on real property which requires Lender's written consent to a sale or transfer of the encumbered real property located at 205 WEBSTER RD BUXTON ME 04093 . See either the Deed of Trust or the Mortgage for terms applicable to Lender's interest in Borrower's real property ("Property").

OWNERSHIP OF PROPERTY: Borrower represents that the Property is owned by Borrower free and clear of all liens and encumbrances except those of which Borrower has informed Lender in writing. Prior to any default, Borrower may keep and use such property at Borrower's own risk, subject to the provisions of the Uniform Commercial Code. If the Property includes a motor vehicle or a mobile home, Borrower will, upon request, deliver the certificate of title to the motor vehicle or mobile home to Lender.

USE OF PROPERTY: Borrower will not sell, lease, encumber, or otherwise dispose of the Property without Lender's prior written consent. Borrower will keep the Property at Borrower's address (as shown on page 1) unless Lender has granted permission in writing for the Property to be located elsewhere. The Property will be used only in the state in which Borrower lives unless the Property is a motor vehicle, in which case it will be used outside the state only in the course of Borrower's normal use of the Property. Borrower will not use or permit the use of the Property for hire or for illegal purposes.

TAXES AND FEES: Borrower will pay all taxes, assessments, and other fees payable on the Property, this Disclosure Statement, Note and Security Agreement, or the loan, including but not limited to any fee required by a public official to record the satisfaction of this loan, and/or the release of Lender's interest in the Property. If Borrower fails to pay such amounts, Lender may in its sole discretion pay such amounts for Borrower; and the amounts paid by Lender will be added to the unpaid balance of the loan, subject to the provisions of the Maine Consumer Code.

INSURANCE: If this loan is secured by Property then fire, extended coverage, collision and/or comprehensive casualty insurance is required, naming Lender as loss payee, until the loan is fully paid. The amount of such insurance must be sufficient to satisfy the unpaid balance of the loan, or be equal to the value of the collateral, whichever is less. Such insurance may be provided through an existing policy or a policy obtained independently and purchased by Borrower. Borrower may obtain such insurance from any insurer that is reasonably acceptable to Lender. If Borrower obtains Automobile Single-Interest Insurance at Lender's office, Borrower acknowledges that such insurance: (1) may cost more than insurance that is available from another insurer; (2) will only protect Lender's interest in the motor vehicle and does not protect Borrower's interest; and (3) does not protect Borrower from claims by other persons. If this loan is secured by personal property, Non-Filing insurance may be required.

If Borrower purchases any insurance at Lender's office, Borrower understands and acknowledges that (1) the insurance company may be affiliated with Lender, (2) Lender's employee(s) may be an agent for the insurance company, (3) such employee(s) is not acting as the agent, broker or fiduciary for Borrower on this loan, but may be the agent of the insurance company, and (4) Lender or the insurance company may realize some benefit from the sale of that insurance. If Borrower fails to obtain or maintain any required insurance or fails to designate an agent through whom the insurance is to be obtained, Lender may purchase such required insurance for Borrower through an agent of Lender's choice, and the amounts paid by Lender will be added to the unpaid balance of the loan, subject to the provisions of the Maine Consumer Credit Code.

FINANCING STATEMENTS: Borrower will sign all financing statements, continuation statements, security interest filing statements, and similar documents with respect to the Property at Lender's request.

LOAN CHARGES: If a law that applies to this loan and that sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under this loan or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge.

DEFAULT: Borrower will be in default if:
1. Borrower does not make any scheduled payment on time;
2. Borrower is (or any other person puts Borrower) in bankruptcy, insolvency or receivership;
3. Any of Borrower's creditors attempts by legal process to take and keep any property of Borrower, including any Property securing this loan;
4. Borrower fails to fulfill any promise made under this agreement; or
5. Borrower fails to perform any terms, conditions, or provisions of any mortgage, deed of trust, or deed to secure debt securing the payment of Note or any other mortgage, deed of trust, or deed to secure debt on the real property.

Subject to Borrower's right to any notice of default, right to cure default, and any other applicable laws, if Borrower defaults, Lender may require Borrower to repay the entire unpaid Principal balance and any accrued interest at once. Lender may accept payments after maturity or after a default without waiving its rights with respect to any subsequent default. Lender's failure to exercise or delay in exercising any of its rights when default occurs does not constitute a waiver of those or any other rights under this agreement or any applicable mortgage, deed of trust or deed to secure debt.

EFFECTS OF DEFAULT: Subject to Borrower's right to any notice of default, right to cure default, and any other applicable laws, if Borrower defaults on a loan secured by Property, Borrower may deliver the Property to Lender or, upon Lender's demand, assemble the Property and make it available to Lender at a reasonably convenient place. Lender may peacefully enter any place, except a dwelling, where the Property is located and take possession of it.

The Property may be sold with notice at a private or public sale at a location chosen by Lender. At any such public sale, Lender may purchase the Property. As permitted by the laws of Maine, the proceeds of the sale, minus the expenses of taking, removing, holding, repairing, and selling the Property, and minus the cost of paying off and removing any superior liens or claims on the Property, and if this loan is secured by an interest in land any reasonable attorney fees and costs that are permitted by law, will be credited to the unpaid balance of Borrower's loan. If Borrower has left other property in the repossessed Property, Lender may hold such property temporarily for Borrower without any responsibility or liability for the property.

Notice of the time and place of a public sale or notice of the time after which a private sale will occur is reasonable if mailed to the Borrower's address at least five days before the sale. The notice may be mailed to Borrower's last address shown on Lender's records.

If real property secures this loan and the Borrower defaults, Lender's remedies are also governed by the applicable mortgage, deed of trust, or deed to secure debt and Maine law.

LAW THAT APPLIES: Maine law and federal law, as applicable, govern this Disclosure Statement, Note and Security Agreement. In no event will Borrower be required to pay interest or charges in excess of those permitted by law.

BAD CHECK CHARGES: If Lender is assessed any cost by its bank because Borrower tenders a check that is returned for insufficient funds, Lender may collect that cost from Borrower.

OTHER RIGHTS: Borrower agrees that Lender may extend time for a payment after maturity without notice. The terms of this agreement can be waived or changed only in a writing signed by Lender.

OTHER TERMS: Each Borrower under this Disclosure Statement, Note and Security Agreement, if more than one, agrees that Lender may obtain approval from one Borrower to change the repayment terms and release any Property securing the loan, or add parties to or release parties from this agreement, without notice to any other Borrower and without releasing any other Borrower from his responsibilities. Subject to any required notice of right to cure, Lender does not have to notify Borrower before instituting suit if the note is not paid. Lender can sue any or all Borrowers upon default by any Borrower.

Borrower will not require Lender to do certain things. These things are: (1) to demand amounts due (known as "presentment"); (2) to give notice that amounts due have not been paid (known as "Notice of Dishonor"); (3) to give notice of any extensions of time to pay which Lender allows any Borrower; (4) to require Lender to bring suit against any person responsible for repayment of this Note. Lender will, however, give Borrower any notice of default or right to cure default required by law.

Borrower gives up certain rights regarding Borrower's Property used as security for this loan. These rights include: (1) the right to have someone else establish how much the Property is worth (known as valuation and appraisement); (2) the right to keep Borrower's real estate and house in which Borrower lives or resides free from any and all creditors (this is known as "homestead"); (3) the right to claim or keep other property or money free from any and all creditors (known as "exemption"); (4) the right to delay or prohibit a creditor or government from taking Borrower's property (known as a stay of execution and condemnation).

This Disclosure Statement, Note and Security Agreement shall be the joint and several obligation of all makers, sureties, guarantors and endorsers and shall be binding upon them, their heirs, successors, legal representatives and assigns. Where the context requires, singular words may be read in the plural and plural words in the singular. References to the masculine gender may be read to apply to the feminine gender.

If any part of the Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and accompanying Itemization of Amount Financed is unenforceable, this will not make any other part unenforceable.

REFINANCING: The overall cost of refinancing an existing loan balance may be greater than the cost of keeping the existing loan and obtaining a second loan for any additional funds Borrower wishes to borrow.

(Intentionally left blank)

AUTHORIZATION TO USE CREDIT REPORT: By signing below, Borrower authorizes Lender to obtain, review and use information contained in the Borrower's credit report in order to determine whether the Borrower may qualify for products and services offered by Lender. This authorization terminates when Borrower's outstanding balance due under this Disclosure Statement, Note and Security Agreement is paid in full. Borrower may cancel such authorization at any time by writing the following: Transaction Processing, 300 St. Paul Place, BSP13A, Baltimore, MD 21202. In order to process Borrower's request, Lender must be provided Borrower's full name, address, social security number and account number.

The following notice applies only if this box is checked. ☐

**NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

By signing below, Borrower agrees to the terms contained herein, acknowledges receipt of a copy of this Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and of the accompanying Itemization of Amount Financed, and authorizes the disbursements stated therein. Borrower acknowledges that Lender reviewed fully the terms and conditions of this loan in advance of presenting the loan documents to Borrower for execution and this document did not contain any blank spaces when Borrower signed it.

NOTICE TO CONSUMER: 1. Do not sign this agreement before you read it. 2. You are entitled to a copy of this agreement.

WITNESSES: _____   SIGNED: _____ (Seal)
                                                    NANCY MCDONOUGH                -Borrower
           _____            _____ (Seal)
           (ONLY WITNESS)                        JOHN M MCDONOUGH              -Borrower
           _____            _____ (Seal)
                                                                                -Borrower
                                                 CITIFINANCIAL, INC.
                                                 By: _____
                                                     (Name and Title)            11/25/2006  10:19:02

SECURITY INTEREST OF NONOBLIGOR: Borrower only is personally liable for payment of the loan. Nonobligor is liable and bound by all other terms, conditions, covenants, and agreements contained in this Disclosure Statement, Note and Security Agreement, including but not limited to the right and power of Lender to repossess and sell the Property and/or real property securing this loan. In the event of default by Borrower in payment of this loan.

_____ (Seal) _____   _____ (Seal) _____
Signature                         Date     Signature                         Date

ME 21173-4  8/2005         Original (Branch)    Copy (Customer)              Page 4 of 4

# NOTE ALLONGE

This indorsement is incorporated into and shall be deemed part of the Note to which it is attached.

Loan Number*:
Ref ID

*as of the date of this Note Allonge*

Borrower Name(s):   NANCY MCDONOUGH ; JOHN M MCDONOUGH

Date of Loan:        11-25-06
Amount of Loan:      $206447.40
Property Address:    205 WEBSTER RD
City, State, Zip:    BUXTON ME 04093


Pay to the order of:

**CitiFinancial Servicing LLC** (a Delaware limited liability company)

Without recourse

**CFNA Receivables (MD), Inc. f/k/a CitiFinancial, Inc.** (a Maryland corporation)

By: _____

Raymond White
Vice President

CFN Loan #
Bayview Loan # 1766700

## ALLONGE TO NOTE

Original Loan Amount: $206,447.40
Note Date:           11/25/2006
Borrower(s):         NANCY MCDONOUGH AND JOHN M. MCDONOUGH
Address:             205 WEBSTER RD
                     BUXTON, ME 04093

### PAY TO THE ORDER OF

_____
_____
_____
_____

### WITHOUT RECOURSE

CITIFINANCIAL SERVICING LLC, A DELAWARE LIMITED LIABILITY COMPANY

By: _____   Dated: __JUL 12 2017__
Name: Danielle Burns
Title: VICE PRESIDENT